JOHN WILBERT DILL ET AL., APPELLANTS, V. HOWARD W. HAMILTON ET AL., APPELLEES.

291 N. W. 62

FILED MARCH 22, 1940.  No. 30577.

*Roland Max Anderson,* for appellants.

*Robert B. Waring* and *John C. Gewacke, contra.*

Heard before SIMMONS, C. J., ROSE, PAINE, CARTER, MESSMORE and JOHNSEN, JJ., and ELLIS, District Judge.

ROSE, J.

Under the declaratory judgment act, plaintiffs, alleging they are officers or members and communicants of the Spiritualist Church, applied to the district court for Fillmore county for a judgment declaring their right to worship God according to their religious beliefs, tenets of faith, ceremonies and rituals, including spiritualistic seances, and also declaring the law to be such as to prevent defendants, who are prosecuting, executive and judicial officers, from interfering with the religious freedom and the devotional exercises of plaintiffs.

The petition contains allegations disclosing incorporation of the Spiritualist Church, its membership, tenets of religious faith, ceremonies and rituals, interference therewith by defendants and threats of future prosecutions for violations of the statute forbidding public exhibitions of religious seances for gain.

Defendants assailed the petition by demurrer which was sustained by the district court and the proceeding dismissed. Plaintiffs appealed.

The demurrer challenges the sufficiency of the petition to state a justiciable case for a declaratory judgment. The determination of the issue thus raised depends on the power conferred upon the courts by the declaratory-judgment act, on the meaning and validity of the act to prohibit all public exhibitions of psychical forces or seances conducted by a spiritualistic medium for gain, and on the allegations of the petition. Declaratory judgments are authorized by the following provisions of statute:

"The supreme court and courts of general chancery and common-law jurisdiction shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree." Laws 1929, ch. 75, sec. 1; Comp. St. 1929, sec. 20-21,140.

"Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder." Laws 1929, ch. 75, sec. 2; Comp. St. 1929, sec. 20-21,141.

"The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." Laws 1929, ch. 75, sec. 6; Comp. St. 1929, sec. 20-21,145.

The statute under which the present controversy arose provides:

"Any person or persons who shall hereafter take part in, practice, assist, or become a subject in giving a public, open exhibition or seance or show of hypnotism, mesmerism, animal magnetism or so-called psychical forces for gain shall be deemed guilty of a misdemeanor." Laws 1911, ch. 182, sec. 1; Comp. St. 1929, sec. 28-1111.

Violations of the act subjects the violators upon conviction to fine or imprisonment or both. Plaintiffs allege and contend that they are threatened by defendants with prosecutions for conducting spiritualistic seances as religious exercises authorized by their established mode of worship,

that defendants construe the act to authorize such prosecutions, and that so construed it is unconstitutional. The petition alleges further than John Wilbert Dill, one of the plaintiffs, is an ordained spiritualistic medium and minister of the Gospel; that he was formerly prosecuted, convicted and fined for alleged violation of the penal statute quoted and paid the fine to avoid imprisonment. Other members of the church are also plaintiffs herein, but no attempt is now made to substitute this proceeding for a new trial in the criminal prosecution or for an appeal or for another action. The former prosecution of Dill is not material to the proceeding at bar except perhaps to indicate a controversy and the necessity for a declaratory judgment. The relief grantable in a proceeding for a declaratory judgment extends by the very terms of the legislative act to the construction or validity of a statute, where there is a justiciable, determinable controversy between the parties in respect to "rights, status or other legal relations thereunder." Plaintiffs, seeking a declaratory judgment, are not required in advance to violate a penal statute as a condition of having it construed or its validity determined. "Declaratory judgment proceedings," says a text, "have frequently been employed to determine questions as to the construction or validity of statutes." 16 Am. Jur. 296, sec. 24. Another writer on the same subject, citing cases, says:

"The danger of a criminal penalty attached by law to the performance of an act affords those affected the necessary legal interest in a judgment raising the issue of validity, immunity, or status." Borchard, Declaratory Judgments, p. 47.

The supreme court of Nebraska by unanimous opinion adopted the following views expressed by the supreme court of Kansas:

"It is hardly conceivable that any fundamental principle of our government, beyond legislative control, prevents two disputants, each of whom sincerely believes in the rightfulness of his own claim, but each of whom wishes to abide by the law whatever it may be determined to be, from obtain-

ing an adjudication of their controversy in the courts without one or the other first doing something that is illegal (in the case of the present defendant criminal) if he is mistaken in his view of the law." *Lynn v. Kearney County,* 121 Neb. 122, 236 N. W. 192; *State v. Grove,* 109 Kan. 619, 201 Pac. 82.

Jurisdiction of a court to render a declaratory judgment is not, therefore, lacking merely because the construction or validity of a penal statute is necessary to a decision. In view of the conclusions of law reached in connection with the facts stated in the petition and admitted by the demurrer, the petition is not demurrable. The ruling below to the contrary is erroneous.

Does the act prohibiting "all public exhibitions of hypnotism, mesmerism, animal magnetism, or so-called psychical forces, for gain," deprive plaintiffs of religious rights guaranteed by the federal and state Constitutions? The language quoted is from the title of the act and is not legislation but indicates the subject of legislation. Alleged illegal interference with religious seances conducted by a spiritualistic medium is the subject of controversy. The prohibitions of the act itself are in this form:

"Any person or persons who shall hereafter take part in, practice, assist, or become a subject in giving a public, open exhibition or seance or show of hypnotism, mesmerism, animal magnetism or so-called psychical forces for gain shall be deemed guilty of a misdemeanor." Laws 1911, ch. 182, sec. 1.

Plaintiffs allege in substance that defendants so construe the act "as to deprive the plaintiffs as members and officers of the Spiritualistic Church of their constitutional rights to freedom of religious worship;" that the Spiritualist Church is a religious society organized, existing and doing business for sectarian and religious worship of Almighty God in accordance with the divine word of the Holy Bible; that seances are among the rites and ceremonies of the Spiritualist Church; that one form of worship is designated by the ordinance and canons of the church as a "seance;" that "A

medium is one whose organism is sensitive to vibration from the spirit world and through whose instrumentality intelligences in that world are able to convey messages and produce the phenomena of spiritualism;" that a seance constitutes one of the most formal and solemn religious services of the Spiritualist Church; that the remuneration of a spiritualistic medium for conducting a religious seance was the authorized, guaranteed, fixed sum of $15 to be raised by voluntary contributions of local communicants in attendance at religious meetings.

A statute authorizing imprisonment for violations of its provisions imposes no restrictions on conduct except those specifically enumerated in the legislative act. The act to prohibit "all public exhibitions of hypnotism, mesmerism, animal magnetism, or so-called psychical forces, for gain," does not prohibit spiritualistic seances, unless they are public and open and for gain. Laws 1911, ch. 182, sec. 1; Comp. St. 1929, sec. 28-1111. The words "psychical forces" as used by the lawmakers apply to a seance conducted by a spiritualistic medium, but his act as such does not violate the statute unless it is "public" and "open" and "for gain." Spiritualistic seances are not of themselves denounced by the lawmakers as criminal. The making of a public exhibition of religious worship in the form of a seance for gain on the stage or at a carnival, fair, circus, or show is not a religious liberty guaranteed by the Constitution. The police power to prohibit public exhibitions for money-making purposes or "for gain" extends to harmful, immoral, or indecent performances, though conducted in the name of religion. These are evils against which the statute is directed. Persons or members of any organization or society committing such offenses are amenable to the law and subject to prosecution and punishment. Plaintiffs, however, disavow any intention to commit such offenses. The act to prohibit "all public exhibitions of hypnotism, mesmerism, animal magnetism, or so-called psychical forces, for gain," does not prohibit spiritualistic seances, unless they are public and open and for gain. Laws 1911, ch. 182, sec.

1; Comp. St. 1929, sec. 28-1111. The statute as herein construed is a valid exercise of police power.

With the truth of the allegations of the petition admitted by the demurrer, a guaranty of $15 to remunerate a medium for conducting a spiritualistic seance as a religious ceremony in the worship of God and the creation of the fund by voluntary contributions of communicants of the Spiritualist Church do not amount to "gain" or a violation of law within the meaning of the statute forbidding public seances for gain.

The district court erred in sustaining the demurrer and in dismissing the proceeding, and for those errors the judgment is reversed. Defendants, however, are permitted to plead further, if so advised, but if they fail to do so, the district court, in that event, is instructed to enter a declaratory judgment conforming to the views herein expressed.

REVERSED.

PAINE, J., dissenting.

This is a difficult case. It was first argued to this court on March 20, 1939, and no opinion being adopted by a vote of four members of the court, it was ordered reargued on January 17, 1940, and has been given careful and patient study by the members of this court.

From the decision now adopted, I respectfully dissent, for in my opinion it is simply an attempt to appeal in a criminal case by use of the declaratory judgment law. Mr. Dill was arrested, and pleaded not guilty in the county court. Trial was had. Witnesses were called by each side, and he was found guilty and fined $25 and costs, and, deciding not to appeal to the district court, paid his fine and costs.

In the statutes of Nebraska, we find the declaratory judgment law in the chapter entitled, "Civil Procedure, District Court," and several of the sections relating thereto are set out in the main opinion.

In the outstanding text on the declaratory judgment law, it may be admitted that the one sentence set out in the main opinion can be found on page 47 in Borchard that appears to indicate that the validity of the criminal penalty may be

tested by the declaratory judgment act, but I maintain that the general trend of this author is against the proposition. Let us examine other references:

"The declaratory action is not a substitute for a new trial or an appeal from a former judgment deciding identical issues or issues which the court believes were passed upon." Borchard, Declaratory Judgments, 181. But, on page 562, we find this paragraph: "Far more interesting are the cases in which the plaintiff, threatened with criminal penalty, * * * demands the construction or interpretation of the statute to the end of establishing his privilege or freedom from the threatened sanction."

This statement in Borchard's text would appear to sustain the position of plaintiff in the case at bar. However, a careful examination of each of the cases given in the text as the authority upon which the author bases these statements does not support the theory. The cases are as follows:

"*Fraser v. Campion*, 29 N. Z. 1009 (1910) (that private burial ground was 'burial ground' within statute, otherwise deed would be void as contrary to rule against perpetuities) ;

"*Budge v. Bayly*, 31 N. Z. (1911) (whether lease had been validly renewed under statute—lessor v. lessee) ;

"*Grubner v. Wright*, (1921) N. Z. 394 (whether defendant could purchase Crown leasehold for son).

"*Lindsey v. Drane*, 154 Tenn. 458, 285 S. W. 705 (1926) (to impound trespassing animals or enforce lien for damages) ;

"*In re Joel's Lease; Berwick v. Baird*, (1930) 2 Ch. 359 (that defendant's lease did not constitute statutory 'holding' and that no notice necessary to terminate it) ;

"*Wesleyan & Gen. Ass'ce Soc. v. Attorney-General*, (1933) Ch. 591 (whether, under statute, profits from industrial insurance could be applied for benefit of ordinary life policyholders) ;

"*Loyal Marlborough Lodge v. Rogers*, 29 N. Z. 141 (1909) (plaintiff's privilege of buying in property sold by him as mortgagee) ;

"*University of New Zealand v. Solicitor-General*, (1917)

N. Z. 353 (method of university administration under statutes) ;

"*Rowley v. Canterbury Slaughtermen's Indus. Union of Workers,* (1918) N. Z. 684 (meaning of 'same industry' for determination of question whether two unions were privileged to unite) ;

"*Heel v. O'Neill,* (1933) N. Z. 319 (effect of Expenditure Adjustment Act on lease between plaintiff and defendant, former asserting defendant's no-right to make deductions from rent)."

Can it be said that any one of these cases will support a finding that relief will be granted under declaratory judgment law against a conviction for a violation of a criminal law?

From an examination of these citations, does it not appear that they are in accord with the statement in *Sheldon v. Powell,* 99 Fla. 782, 128 So. 258, to the effect that the application of the declaratory judgment act is held restricted to suits in equity by those interested under deeds, wills, contracts, or other written instruments?

In England and the British Dominions, declaratory judgments have been in effect for a much longer time than in the United States. We find in British reports many guiding precedents for the exercise of court's discretion. In *Russian Commercial & Industrial Bank v. British Bank,* 90 L. J. K. B. n. s. 1089, it was said by the House of Lords: "The question in what cases the jurisdiction to give a declaratory judgment should be exercised has been considered in a number of cases which were called to our attention by counsel for the appellants. It should be exercised '*sparingly*' * * * 'with *care* and *jealousy*' * * * '*with extreme caution.*' " (Italics mine.) See 34 Law Notes, 48 (June, 1930).

In annotations, 68 A. L. R. 110, and 114 A. L. R. 1361, the illustrative cases on declaratory judgments cover matters relating to estates and trusts, validity of instruments, such as wills, contracts, leases, insurance policies, bills of sale, mortgages, deeds of trust, and assignments, covering the same matters set out in section 20-21,141, Comp. St. 1929.

No case is cited like the one at bar, wherein a person, who has been tried and found guilty, decided to close up the matter and pay his fine, rather than appeal to the district court, in which he could have been tried on the charge by a jury, but who, on the other hand, thereafter attempted to test out the question by bringing a declaratory judgment action, threatening to commit the same acts a second time, and desiring to find out in advance from the supreme court whether he could again be found guilty.

It is also well settled here, as in England, that relief by declaration of right or a declaratory judgment is discretionary with the court, and the power of the court in this regard will be exercised with caution.

Many courts have held that, the trial court having exercised its discretion and decided not to give relief under this declaratory judgment law, the supreme court should not reverse the trial court unless this court can find that its ruling was an abuse of its discretion, which has not been shown in this case.

May I call attention to another insurmountable obstacle which faces this court in attempting to determine and limit in advance what a criminal statute of our state would or would not cover. I refer to the fact that in this case the state of Nebraska was not made a party.

Section 20-21,150, Comp. St. 1929, specifically requires: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding."

Section 20-21,152, Comp. St. 1929 (of the declaratory judgment act), defines "person" as including, among others, municipal or other corporations, but does not specifically include the state of Nebraska, and the state is not ordinarily bound by any act unless especially mentioned therein. For this court has said in State v. Boone County, 78 Neb. 271, 110 N. W. 629: "In this country it is generally held that the sovereign power is not bound by general words in a statute, but only when included expressly or by necessary implication."

All criminal prosecutions in this state are brought in the name of the state of Nebraska, and in the case at bar the state of Nebraska is not made a party, but only the county judge, county attorney, and sheriff of one of the 93 counties of Nebraska. We note that there appears in the transcript an acknowledgment by the attorney general of service, and receipt of copies, and notice of the proceedings, but in my opinion this does not in any way make the state of Nebraska a party to this case. See *Anstine v. State, ante,* p. 148, 288 N. W. 525.

"The presumption of a legislative intent to exclude the state from the operation of a statute is based on the fact that laws are ordinarily made for the government of citizens and not of the state, and the probability that, if the legislative power intended to divest the sovereign power of any right, privilege, title or interest, it would say so in express words. Where an act contains no words to express such an intent, it will be presumed that the intent does not exist." 25 R. C. L. 784, sec. 32.

"Declaratory judgments act is applicable only where there is a present, actual controversy, and only where justiciable issues are presented and all persons are made parties to the proceeding." *Dobson v. Ocean Accident & Guarantee Corporation,* 124 Neb. 652, 247 N. W. 789, in which the judgment was refused because the city was not made a party to the proceeding, and would not be concluded by any judgment in the action. See, also, 12 Neb. Law Bulletin, 262; *Smithberger v. Banning,* 130 Neb. 354, 265 N. W. 10.

Therefore, I submit the question: If an action to limit by interpretation one of our criminal laws would lie under the declaratory judgment act, would not the state, instead of one of 93 county attorneys, be an absolutely necessary party?

A declaratory judgment should be denied in all cases where it is evident that it is designed to take the place of an appeal. If all parties are not joined, it is proper to dismiss an application for a declaratory judgment because it failed in its essential purpose.

"More often, however, the court dismisses the proceed-

ing, on the ground that some designated necessary party or parties should have been heard, not only for the information of the court but because such a party might be affected by, even though not bound by, the decision; and in so conclusive a proceeding it would be neither just nor proper to render a judgment without hearing and binding such interested person." Borchard, Declaratory Judgments, 104.

There is a difference of opinion as to the nature of declaratory judgment proceedings. It has been held that they are equitable in nature. *Town of Manchester v. Town of Townshend,* 109 Vt. 65, 192 Atl. 22, 110 A. L. R. 811.

In other cases, the declaratory judgment act is regarded as a step to obliterate the twilight zone between law and equity, even though it has been held that a court of equity may not declare a purely legal right. 87 A. L. R. 1245; 16 Am. Jur. 289, sec. 15.

In a recent opinion by this court, it was unanimously held: "The declaratory judgment law is not substitute for new trial or appeal, nor does it operate to supersede former adjudications or proper proceedings already pending in a court having jurisdiction of parties and subject-matter." *Phelps County v. City of Holdrege,* 133 Neb. 139, 274 N. W. 483.

"The purpose of the declaratory judgment act was to have a declaration of rights not theretofore determined, and not to determine whether rights theretofore adjudicated had been properly adjudicated. In other words, it was never intended as a substitute for a new trial, or other steps that the Code requires to be taken in the same action, or for an appeal to this court. In the circumstances, the court below should have dismissed the proceeding and not have proceeded to adjudicate the rights of the parties." *Back's Guardian v. Bardo,* 234 Ky. 211, 27 S. W. (2d) 960.

In *State v. General American Life Ins. Co.,* 132 Neb. 520, 272 N. W. 555, we determined that the state of Nebraska might seek relief under the declaratory judgment act, but that is easily distinguished from the case at bar.

Section 20-21,145, Comp. St. 1929, reads: "The court

may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding."

Our Constitution reposes in the constitutional jury the ultimate and final right of determining facts in cases involving the punishment of crimes, and provides that the right thereto shall remain inviolate, and that all persons accused of a crime shall be entitled to a speedy public trial in the county where the offense is alleged to have been committed, with full right of appeal to this court.

Courts of equity and tribunals vested with powers of decision under the declaratory judgment act may not expressly, or by necessary implication, usurp power in violation of the constitutional guaranties of jury trials, and attempt to set up acts which will, or will not, render one guilty under a criminal law.

In my opinion, it would not be proper to enter a declaratory judgment in the case at bar, and the trial court was right in sustaining the demurrer and dismissing the petition.