375 P.2d 756

William D. BACKMAN, a Taxpayer for Himself and for all others Similarly Situated, Plaintiff and Respondent,

v.

SALT LAKE COUNTY, a body corporate and politic, Defendant and Appellant.

No. 9697.

Supreme Court of Utah.

Nov. 2, 1962.

Grover A. Giles, County Atty., James A. McIntosh, Gerald Nielson, Asst. County Attys., Salt Lake City, for appellant.

Brayton, Lowe & Hurley, Salt Lake City, for respondent.

HENRIOD, Justice.

Appeal from a judgment declaring the Civic Auditorium and Sports Arena Act

of 1961 [1] unconstitutional in an action instituted under the Declaratory Judgments Act.[2] Affirmed. No costs awarded.

At the outset it seems that this case is resolvable on but one procedural point: That the county did not follow the interdiction of the act with respect to initiating the election at the time and in the manner called for under the act. However, we feel constrained to discuss the points raised, with cautionary observations anent employment of the Declaratory Judgments Act in the future.

It appears that the act was conceived and passed in haste, on March 9, 1961, in the compulsory closing hours of an overtaxed legislature,[3] producing an unconstitutional pregnancy, resulting in a birth in which its legislative pains could not be anaesthetized by any proper judicial ministration.

Title 11–11–3, Utah Code Annotated 1953 (Laws of Utah 1961, ch. 26, sec. 3) provided that "At the *next succeeding municipal election* * * * the legislative bodies of all counties * * * with a population greater than 250,000 according to the last official census shall call and provide for * * * a special election * * * at which election the proposition of the incor-

poration of a civic auditorium and sports arena district * * * *shall be* submitted to the electors * * *. Thereafter, at the next succeeding municipal *or* general election *following any official census* at which the population of any county * * * is established to be in excess of 250,000, the legislative bodies of such counties shall call and provide for the holding of a special election in said counties * * * *" for the same purpose.

Salt Lake County did not call or provide for an election at the next "succeeding municipal election," so that from the act's wording, it would appear grammatically if not too articulately, that an election was *required* by Salt Lake County in 1961, failing which it would have to wait until after an official census to initiate an election. Use of the word "Thereafter" in the second sentence, followed by a provision that at the next succeeding municipal or general election following any official census, counties having been shown to have the required population are required to hold an election on the proposition, would indicate the election in the first instance *must* have been initiated in 1961, and that any attempt to waive the interdiction requiring a 1961 election and hold the election in the 1962 general election, would be abortive, and Salt

1. Title 11–11, U.C.A.1953 (Laws of Utah, 1961 ch. 26.)

2. Title 78–33, U.C.A.1953.

3. The legislature adjourned March 9, the same day the act passed.

Lake County[4] in so attempting, would be too late.

There was no reason to include in the first sentence the words "or general election," since the act was passed in 1961, and the next general election would not be until 1962. To have included "at the next municipal or general election" in the mandatory phrase of the first sentence, would have introduced a discretion as to when the election was to be held, which clearly was not intended. In other words, the probable reason for excluding "general" election in the first sentence was to require an earlier election rather than for the purpose of having certain counties, those with 250,000 population in 1961, elect at a certain type of election. Whether or not the county could have been required to hold an election in an appropriate action, or should have held the election last year is of no consequence now.

■ Any argument otherwise would require the thrust of language into the act, not there present. To do so under the pretext of stating that the legislature said something it did not mean, would amount to judicial legislation. Under the particular wording of this act, it seems to us that if any other contention were deemed to have any merit at all, the language would be subject to such vaguery as to be constitu-

tionally vulnerable for that reason, and thus fatally defective. We are constrained to accept the words in their plain meaning and in their grammatical setting, which means that having skipped the 1961 municipal election, the problem became moot. Thereafter there would seem to have been no justiciable controversy.

■ We believe also that there was no such justiciable controversy for reasons stated in Lyon v. Bateman,[5] particularly that portion of the case requiring that "the interests of the parties must be adverse." The plaintiff pleaded that he and other taxpayers would suffer by needless expenditure of tax money if an election were held, which proved to be constitutionally abortive. At the hearing before this court, counsel for plaintiff commendably and candidly conceded that this action was instituted out of justifiable concern and at the request of a firm of eastern attorneys. Just as candidly, the plaintiff conceded that upholding the constitutionality of the act by this court was hoped for and desired.

■ We cannot see how there could be a true adversary proceeding under such circumstances. That is not to say that in a proper proceeding other than the type here, at which evidence might be adduced and findings made, the matter would be

4. The only county that could have taken advantage of the act and held an election thereunder.

5. 119 Utah 434, 228 P.2d 818 (1951).

incontestible,—but simply that the Declaratory Judgments Act is not designed for giving advisory opinions in a non-adversary action, or to insure against feared risks. We reaffirm the language of Lyon v. Bateman, where we said:

"While the statutes authorizing courts to render declaratory relief should be liberally construed in order to provide prompt settlements of controversies and to stabilize uncertain legal relations, courts, nevertheless, must operate within the constitutional and statutory powers and duties imposed upon them. They are not supposed to be a forum for hearing academic contentions or rendering advisory opinions. In order to maintain an action for declaratory relief, plaintiffs must show that the justiciable and jurisdictional elements requisite in ordinary actions are present, and a judgment can be rendered only in a real controversy between adverse parties. Generally, courts have held that the conditions which must exist before a declaratory judgment action can be maintained are: (1) a justiciable controversy; (2) the interests of the parties must be adverse; (3) the party seeking such relief must have a legally protectible interest in the controversy;

and (4) the issues between the parties involved must be ripe for judicial determination."

In addition we call attention to our observations in Merkely v. State Tax Commission [6] relating to this subject.

Numerous points were posed on appeal. Some of them may be determined summarily:

1. Secs. 11–11–6 and 11–11–18, relating to notice of election are identical, save for names, to 73–8–11 and 73–8–23 of the Metropolitan Water District Act. These were tested as to constitutional due process objection in Lehi City v. Meiling,[7] to which reference is made for affirmance here.

2. Under 11–11–12, the validity of the incorporation of the district is made incontestible if no suit is instituted to test them within three months thereafter. Similar section is found in the Metropolitan Water District Act.[8] We think the time limitation for the specific matters mentioned is not offensive to due process as being unreasonable.[9]

3. Sec. 11–11–3 provides for voting at a municipal election. It was urged that more urban voters would attend, since rural voters might have to vote in consolidated districts. We think this argument to

---

6. 11 Utah 2d 336, 358 P.2d 991 (1960).
7. 87 Utah 237, 48 P.2d 530 (1935).
8. Title 73–8–17, U.C.A.1953 (Laws of Utah 1935, ch. 10) as amended.

9. Crawford v. Hunt, 41 Ariz. 229, 17 P.2d 802 (1932); 120 A.L.R. 757.

be untenable, and but a conclusion, not justifying a determination that Utah constitutional equal protection guarantees [10] would be violated.

4. As to the contention the act violates Art. VI, sec. 23 of the Utah constitution, relating to bills containing but one subject, because of certain language in secs. 11–11–25 and 11–11–29 violating the constitutional prohibition, we think such contention without merit under the pronouncements of this court in Kent Club v. Toronto [11] and State v. Twitchell. [12]

5. It is urged that sec. 11–11–3 is vague since it does not say who is to pay the cost of the initial election. It does say that the county shall *provide* for the election. This connotes that the county should pay the cost. Any constitutional question on grounds other than vagueness is not before us.

6. It is contended that secs. 11–11–5, 11–11–6 and 11–11–8 are vague as to who must pay the costs incident to elections called by the district itself. These sections are related to and are so interwoven with sec. 11–11–17, dealing with what the board of directors of the district can do, to the exclusion of others, as to make the last section controlling. There seems to be no vagueness here, and it would be unreasonable to conclude that someone not mentioned therein should be required to pay such costs.

7. It is urged that the act is vague since secs. 11–11–6 and 11–11–32 have language implying that there may be more than one county in each district. This obviously indicates that in copying the Metropolitan Water District Act, the scriviners failed to make minor changes. The whole act contemplates but one district coterminous with one county, and the error in copying in this case is negligible and insufficient to invalidate.

8. Failure to provide in sec. 11–11–15 for 9 directors in districts having no city of the first class (which would have 3 directors), re-emphasizes poor draftmanship, but insufficient to invalidate the act on the ground of vagueness. Six directors, under its language, *could* act as the board of such a district.

9. Any asserted inconsistency between secs. 11–11–13, having to do with a 10 mill levy and 11–11–13(7), having to do with a 9.9 mill levy, is resolved by the fact that the latter defines the *powers of the district* and is controlling over the former, which has to do with what directors are authorized to do.

10. It is asserted that the act violates Art. XIII, sec. 5 of the Utah con-

10. Art. I, sec. 2, Utah Constitution.

11. 6 Utah 2d 67, 305 P.2d 870 (1957).
12. 8 Utah 2d 314, 333 P.2d 1075 (1959).

stitution that prohibits the legislature from imposing taxes for municipal purposes but may vest in municipalities the power to assess and collect taxes for "all purposes of such corporation." This section would be violated if it be assumed that the district was a municipal corporation. Having held that the act attempted to create a special commission results in such assertion becoming moot.

■ 11. It is contended that the act violates Art. XIII, sec. 10 of the Utah constitution since it contemplates that the property of the district would go untaxed. There is nothing in the act saying the property would not be taxed, so that it would be controlled by the provisions of Art. XIII, sec. 10, unless the district in some way could be exempted under Art. XIII, sec. 2, which exempts property of the state, counties, cities, towns, school districts, municipal corporations, libraries, houses of worship and places of burial. In view of what we decide about the act attempting to create a special commission to perform a municipal function, it would appear that this problem will have to be met when and if it arises under the particular facts of the case involving such problem.

The more important aspects of this case are discussed below:

■ Plaintiff says the act creates a special commission in violation of Art. VI, sec. 29 of the Utah Constitution.[13] With this we agree. Three conditions are necessary to violate this provision: 1) delegation to a private commission of power to 2) interfere with municipal property or 3) to perform a municipal function. It cannot be gainsaid that operating a civic auditorium and sports arena is a municipal function. Here is the distinction between this case and the Metropolitan Water District Act, as interpreted in Lehi v. Meiling, supra. With somewhat tortuous reasoning, punctuated by two dissents and a special concurring opinion, that case obviously was predicated on the assumption that because of the *magnitude* of the *water* project,[14] *which could not have been accomplished by a single municipality*, coupled with statewide concern and interest in *water* consumption and conservation, together with the fact that that act was not only general and uniform, calling for such promotion not coterminous with any city or county, but available for many cities and counties, overlapping or non-contiguous, there was no special commission performing a municipal function. We agree with the conclusion arrived at there under the facts of that case, but we have a healthy respect for the reasoning of the dissent.

13. "The legislature shall not delegate to any special commission * * * any power to * * * interfere with any municipal improvement, * * * to levy taxes * * * or to perform any municipal functions."

14. Pasadena v. City of Chamberlain, 204 Cal. 653, 269 P. 630 (1928).

Although furnishing water to inhabitants ordinarily is *one* of the many functions of a municipality, if such municipality cannot accomplish such objective, consumption and conservation of water in this arid state are so important as to invoke the state police power and justify the state, which owns all the water anyway,[15] to take whatever measures are necessary, short of arbitrary and unreasonable action, to conserve and put to the greatest beneficial use every available drop of water, both statewise and local. Had the Metropolitan Water District Act applied to counties only, we may have paused in saying there was not a special commission created to perform a municipal function. Water is the lifeblood of this state. A sports arena may give expression in normal times to the heartbeat of a local community, but the obvious difference from the standpoint of absolute necessity, destroys any analogy between the two. We can see little similarity in Lehi v. Meiling and the instant case. If Art. VI, sec. 29 has any meaning at all, it would seem to be applicable here;[16] otherwise a legislative act could create a commission with authority to levy 10 mills,—or more, to operate and maintain the highway system of a municipality, its parks and recreation areas, sewage disposal, health department, the police force, the fire department, parades, and even municipal government itself, ad infinitum. Individual services, in such events, could result in taxation of property at 100% of its value,—or more.

We are convinced that the framers of our state constitution wisely anticipated the inroads that might be cut in the structure of local, representative government, which fundamentally is composed of officials elected by those closest to government, the electors, when they judiciously insisted on incorporating Art. VI, sec. 29 as a *must* in our constitution. We hold that this act attempted to create a special commission offensive to the plain terms of Art. VI, sec. 29.

Since we have determined that the act attempted to violate that Article, it seems unnecessary further to canvass the point raised with respect to whether the commission would be a municipal corporation violative of Art. XIII, sec. 5.

Since we have concluded that the act attempted to delegate to a special commission power to perform a municipal function, offensive to Art. VI, sec. 29, it becomes unnecessary to determine whether constitutional debt limits[17] would be exceeded. Parenthetically, it appears to us that the

15. Wrathall v. Johnson, 86 Utah 50, 40 P.2d 755 (1935).

16. Logan v. P. U. C., 72 Utah 536, 271 P. 961 (1928).

17. Art. XIV, secs. 3 and 4, Utah Constitution. Sec. 3 prohibits counties, school districts, cities, towns or villages, or any of their subdivisions to create debt in excess of current taxes, unless put to a vote of the electors. Sec. 4 prohibits creation of debt where authorized by sec. 3, in excess of 2% of the value of tax-

machinery set up in the act may have been designed as a vehicle in which to detour around the debt limit interdictions.

■ As to the contentions that the act violates Art. XI, sec. 5, prohibiting special laws to create municipal corporations, Art. VI, sec. 26, dealing with limited powers of the legislature, saying that where a general law can be applicable, no special law is enactable, and Art. I, sec. 24, providing that general laws must have uniform operation, we have the following to say:

■ The act provides for a commission to operate an auditorium in counties having over 250,000 population. Only one such county presently could have availed itself of the act. It is urged that the act is uniform in that it applies to *all* counties in the state having a population *over 250,000*, and that such classification is not unreasonable. Lehi v. Meiling strongly is urged in support of such contention, but a casual reading of the Metropolitan Water District Act shows no classification by population. Unequivocally it is available to any or all cities, statewide, areawide, with no exclusions. Obviously there is no similarity as to uniformity of legislation between that act and the one here, so that the Lehi case is no authority for the situation

here. The argument that "counties having more than 250,000 people are more likely to require * * * an auditorium than counties with less than 250,000" is but a conclusion, not probative of the fact, and having no basis for justifying the classification here. It is conceded that where only certain areas are in a position to advantage by a general law, does not make it special and unconstitutional.[18] Although dealing with constitutional problems concerning county government, we think the reasoning of State ex rel. Wright v. Standford[19] apropos here. There the act held unconstitutional provided for inspectors in counties having 5,000 or more fruit trees and for deputies in counties having over 20,000 population. We had this to say:

"* * * The act was doubtless intended to apply * * * to certain particular counties, to the exclusion of others * * * The act is therefore not uniform throughout the state, * * *."

True it is that Salt Lake County v. Salt Lake City[20] sustained a statute requiring cities of the first or second class to build detention homes. There was no classification by population, but rather by the class of city within the county. Such classifica-

---

able county property, nor in excess of 4% of the value of city, town, school district or other municipal corporation taxable property.

18. Lehi v. Meiling, supra; Pasadena **v.** Chamberlain, supra.

19. 24 Utah 148, 66 P. 1061 (1901); Saville v. Corless, 46 Utah 495, 151 P. 51, L.R.A. 1916A 651 (1915).
20. 42 Utah 548, 134 P. 560 (1913).

tion is allowed by the constitution itself.[21] Such was the situation in Patterick v. Carbon Water Conservancy District.[22] Furthermore, the function with respect to detention homes is one for which the state itself is responsible, but since it affects local areas, is delegable to local government.[23] In the case cited, as in Lehi v. Meiling, the state has the duty statewide and locally, to provide such facilities, and in this respect differentiates itself from the case here.

(Italics supplied.)

WADE, C. J., and CALLISTER, J., concur.

McDONOUGH and CROCKETT, JJ., concur in the result.

21. Art. XI, sec. 5, Utah Constitution.
22. 106 Utah 55, 145 P.2d 503 (1944).
23. State ex rel. Faxon v. Owsley, 122 Mo. 68, 28 S.W. 659 (1894) ; Ex Parte Loving, 178 Mo. 194, 77 S.W. 508 (1903).