497 P.2d 848

Susan H. PARKER et al., Plaintiffs
and Respondents,

v.

Honorable Calvin L. RAMPTON, Governor
of the State of Utah, and Honorable Ver-
non B. Romney, Attorney General of the
State of Utah, Defendants and Appellants.

No. 12494.

Supreme Court of Utah.

May 17, 1972.

Callister, C. J., dissented in an opinion
in which Henriod, J., concurred.

Vernon B. Romney, Atty. Gen., G. Blaine Davis, Verl R. Topham, Asst. Attys. Gen., Salt Lake City, for defendants and appellants.

David S. Dolowitz, Salt Lake County Bar Legal Services, Salt Lake City, for plaintiffs and respondents.

CROCKETT, Justice:

Plaintiffs allege: that each is the parent of two children; that each has sought sterilization from their physicians, who have refused because of forebodings as to the effect of Sec. 64–10–12, U.C.A.1953. They seek an adjudication declaring that this section does not apply to them, but prohibits sterilization only as to persons whom we refer to herein as the "class of defectives." The subject is dealt with in Chapter 10, Title 64, U.C.A.1953, which provides for procedures to be followed by officials of certain state institutions for the sterilization of persons who are inmates therein or are afflicted with certain named defects.

That chapter commences:

64–10–1. Authorization in general—. . . Whenever the superintendent of the Utah State Hospital, or of the Utah State Training School, or of the State Industrial School, or the warden of the state prison, shall be of the opinion that it is for the best interests of the inmates or of society that any inmate . . . or of any person adjudged to be insane, an idiot, an imbecile, feeble-minded, or epileptic shall be sexually sterilized, such superintendent or warden is authorized to cause to be performed

by some capable surgeon the operation of sterilization or asexualization on any such inmate or person . . . provided, that such superintendent or warden shall have first complied with the requirements of this chapter. . . .

The statute referred to, Sec. 64–10–12, upon which adjudication is sought provides:

Unlawful destruction of power to procreate, a felony.—Except as authorized by this chapter, *every person who* performs, *encourages,* assists in or otherwise promotes the performance *of any of the operations described in this chapter* for the purpose of destroying the power to procreate the human species, unless the same shall be a medical necessity, is guilty of a felony.

After having made appropriate findings the trial court stated in its conclusions of law:

That the legislative history and codification of the Sterilization Act, Chapter 10 of Title 64, Utah Code Annotated 1953, requires that Section 64–10–12, Utah Code Annotated 1953, be construed *to apply only to institutionalized persons* and said statute does not prohibit a person who is not institutionalized [i. e., anyone else] from voluntarily undergoing an operation for the purpose of being sterilized, that is, destroying the power to procreate.

And as part of the decree:

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

\* \* \* \* \* \*

That the [named defendants] . . . and all other law enforcement officers of the state of Utah, should be and are hereby enjoined from enforcing the provisions of Sec. 64–10–12, U.C.A.1953, except as said statute is applied to state institutions and the inmates and patients therein.

 In connection with the problem which arises in analyzing this statute there is to be kept in mind the principle, essential to a free society, that each individual should be free to choose his own course of conduct. and to take the consequences thereof, except only as restricted by law.[1] This should be especially true of matters relating to one's own person. It is recognized of course that in various phases of conduct, which may interfere with others, or conflict with the interests of society generally, there must be some restrictions. But such regulations and restrictions are for the legislature to determine;[2] and they

---

1. To be convicted of crime one's conduct must be plainly and unmistakably prohibited by the statute, see State v. Pigge, 79 Idaho 529, 322 P.2d 703; 22 C.J.S.
Criminal Law § 17 and authorities therein cited.

2. That whole law making power is vested in the Legislature see Art. VI, Sec. 1,

should be set forth in the statutory law with sufficient certainty and clarity that persons of ordinary intelligence who desire to obey the law can understand what the requirements are in order to conduct themselves in conformity with it.[3] Correlated to the foregoing is the proposition that if there is any doubt or uncertainty as to any such restriction by law, its origin, history and purpose can be examined to determine its correct interpretation and application.[4]

The statutes with which we are concerned, Chapter 10 of Title 64 referred to above, are the only provisions in our law relating to sterilization. The original enactment was Chapter 82, S.L.U.1925, and was entitled:

> An Act to prevent the procreation of habitual sexual criminals, idiots, epileptics, imbeciles and insane and providing penalties for the violation thereof.

We think it unnecessary to set forth in detail the entire act, but an examination of the original act and all subsequent amendments, now comprising fourteen sections, 64–10–1 to 14, inclusive, U.C.A.1953, reveals that they deal only with the matter of sterilization of inmates of state institutions or those who are "adjudged to be in-

sane, an idiot, an imbecile, feeble-minded, or epileptic," whom we refer to herein as the "class of defectives," and nothing is said in those statutes which refers expressly to sterilization of anyone else. It thus seems reasonable to conclude that the language of Section 12, under scrutiny here, is intended to mean that the "operations described in this chapter," that is, sterilization operations upon the "class of defectives" dealt with therein, must be done "as authorized by this chapter"; and that it is the failure to comply with the requirements of that chapter, by giving notice, having a hearing, and making a determination of the facts by the board of each institution, that is proscribed as a felony.

There is another aspect of said Chapter 10 which has a bearing on the problem we are concerned with. The section following Section 12, which is the point of focus in this case, states in part:

> 64–10–13. Word "person" defined— . . . The word "person" when used in this chapter shall mean any individual adjudged by a district court to be insane, an idiot, an imbecile, feeble-minded, or epileptic. . . .

Setting forth the restrictive definition of the word "person" as used in that chapter

Utah Constitution; State v. Mason, 94 Utah 501, 78 P.2d 920, 117 A.L.R. 330; State ex rel. Stain v. Christensen, 84 Utah 185, 35 P.2d 775.

3. See Henrie v. Rocky Mountain Packing Corp., 113 Utah 444, 202 P.2d 727; State v. Packard, 122 Utah 369, 250 P.2d

561; and Skaggs Drug Centers, Inc. v. Ashley, 26 Utah 2d 38, 484 P.2d 723.

4. Masich v. United States Smelting, Refining and Mining Co., 113 Utah 101, 191 P.2d 612, appeal dismissed 335 U.S. 866, 69 S.Ct. 138, 93 L.Ed. 411, rehearing denied 335 U.S. 905, 69 S.Ct. 405, 93 L.Ed.

emphasizes that it is concerned only with the "class of defectives" enumerated therein. If any idea is projected of giving the word "person" a broader meaning than the restrictive one just quoted, that would result in such uncertainty and confusion as to make the statute unenforceable.[5]

■ For the reasons stated: that the statute here under scrutiny, Sec. 64–10–12, is directed only to the subject of sterilization of the "class of defectives" described in Sec. 64–10–1, U.C.A.1953, and the fact that there is no other statute which deals with sterilization, it is our opinion that our law places no restriction upon the right of individuals to have such a sterilization operation if they do desire.

■ With respect to the issue presented in the dissent: whether there exists a justiciable controversy between the parties, we do not see this action as an effort to obtain an "advisory opinion in a nonadversary action" in which "the plaintiffs do not assert that they might be prosecuted under Sec. 64–10–12."

The affidavit of each plaintiff states:
That I desire to undergo a sterilization operation . . .

That I have been advised . . . that if I do obtain a sterilization operation, I may be guilty of . . . felony . . .

Plaintiffs each state that they have applied to their physicians, each of whom has refused to perform the sterilization because of his fear that he might be guilty of a felony if he did so, as advised by attorney John Snow, counsel for the Utah Medical Association. The plaintiffs' affidavits are uncontradicted. Thus the genuineness of the fear of themselves and their physicians that they might render themselves subject to prosecution stands uncontested; and that is the basis upon which the issue was presented to and decided by the trial court.[6]

The matter of justiciability was dealt with in Mayers v. Bronson.[7] The petitioner Mayers had been ordered to show cause in the district court concerning the production of documents and records in a tax controversy. He challenged the authority of the court and its power to punish for contempt in such a proceeding. As against a petition for a writ of prohibition the issue was raised that no justiciable controversy had ripened, and that the right to ap-

---

439; Western Auto Transport v. Reese, 104 Utah 393, 140 P.2d 348.

5. See cases footnote 2 above.

6. As to the genuineness of the fears expressed, it should be had in mind that under our law, Sec. 76–1–44, U.C.A.1953, all persons concerned with the commis-

sion of a crime, whether acting directly, or aiding and abetting, are guilty as principals. See State v. Johnson, 6 Utah 2d 29, 305 P.2d 488; and State v. Ervin, 22 Utah 2d 216, 451 P.2d 372. Appellant's brief correctly states that there has been confusion as to our Utah statute in that our statute "has been

peal would be an adequate remedy. This court entertained the writ and through Justice Wolfe pointed out that:

> . . . the difficulty in that situation is that the petitioner would be required to let the proceeding against him go on to such a point, where if he appealed and lost *he would have to submit to sentence.* He would try out his right at the peril of confinement. *The petitioner is not required to put himself in such position.* It is not the case of having to submit to the ordinary judgment . . . But where the matter involves a restraint of personal liberty the case is different. *It cannot there be said . . . that he then has an adequate remedy by appeal.* . . . To require him to test out his rights on such gamble does not furnish a plain or adequate remedy at law. But if . . . he sues out a writ of prohibition and is found to be wrong, he may still purge himself by compliance. . . .

█ As to declaratory judgment, the very purpose of that statute was to provide a means for securing an adjudication without the necessity of someone having to suffer damage or get into serious difficulty before he could seek to have his rights de-

termined in court.[8] The subject is admirably treated by Professor Edwin Borchard in an article on "Challenging Penal Statutes by Declaratory Action" in 52 Yale Law Journal, 445. He points out that the basis of such action is created by the restriction upon freedom of action the penal statute places upon plaintiffs and others. A number of supporting authorities are cited. In Terrace v. Thompson, Attorney General of the State of Washington, 263 U.S. 197, 44 S.Ct. 15, 68 L.Ed. 255, an injunction was sought to restrain the enforcement of a Washington statute prohibiting transfer of land to persons ineligible for citizenship (Japanese). In reference to the challenge of nonjusticiable controversy the U.S. Supreme Court stated:

> They [plaintiffs] are not obliged to take the risk of prosecution, fines and imprisonment and loss of property in order to secure an adjudication of their rights.

The article also cites the cases of Dill v. Hamilton,[9] that plaintiffs seeking a declaratory judgment that spiritualist seances do not constitute a public exhibition for gain were not required in advance to violate a penal statute as a condition of having it construed or its validity determined; and

commonly understood to prohibit voluntary sterilization," and quotes several texts which declare that: "Only three states, Connecticut, Kansas and Utah have statutes which prohibit voluntary sterilization," citing, 3 J. Family L. 103,

118 (1963); 1 U.San Francisco L.Rev. 159, 174–75 (1966); 18 DePaul L.Rev. 560, 561 (1969); IV Family L.Q. 373, 378 (1970).

7. 100 Utah 279, 114 P.2d 213.

Sage-Allen Company, Inc. v. Wheeler,[10] wherein with respect to a similar problem the court stated:

> Certainly these plaintiffs may justly claim that the court should declare whether or not the regulation is valid that they may, without actually violating it, be authoritatively apprised of their rights.

From what has been said above it is inescapably clear that the plaintiffs have shown a proper basis to have their rights vis-a-vis the statute in question determined. For the same reasons and policy considerations they should not be denied that determination because they did not select the defendants someone else may have chosen. Where a vital question is involved, and especially where public interest is concerned, the statute should be liberally interpreted and applied to effectuate its purposes. What is necessary in such a declaratory judgment action is that there be a defendant whose interest is involved. This it would seem is to be true of the Attorney General who is the chief legal officer of the State, and charged with the duty of representing its interests.[11] The interests of the State and the Attorney General in sustaining the validity of enactments of the legislative branch of government are recognized in the Declaratory Judgment Act. Sec. 78–33–11, U.C.A.1953, provides in part:

> Parties.— . . . if a statute . . . is alleged to be invalid the attorney general shall be served with a

8. See 1 C.J.S. Actions § 18(3) and cases there cited.

9. 137 Neb. 723, 726, 291 N.W. 62, 64, 129 A.L.R. 743. See Annotation following that case in 129 A.L.R. 751, citing numerous cases supporting the proposition stated in our decision; and also see Supplemental Anno. 10 A.L.R.3d 727 et seq. Similar rulings in Pacific Meat Co. Ltd., etc. v. Otagaki, Chm. Dept. of Agriculture, etc., 47 Hawaii 652, 394 P.2d 618. Declaratory judgment proper to determine validity of poultry-labeling statute before actual violation, see Zeitlin v. Arnebergh, 59 Cal.2d 901, 31 Cal.Rptr. 800, 383 P.2d 152, Declaratory judgment proper to determine question of pornography prior to selling book; Declaratory judgment allowed as to obscenity of film, Hughes Tool Co. v. Fielding, 297 N.Y. 1024, 80 N.E.2d 540.

10. 119 Conn. 667, 673, 179 A. 195, 197 (1935).

11. The Constitution of the State of Utah, Article VII, Sec. 18, says:
"The Attorney General shall be the legal adviser of the State officers, and shall perform such other duties as may be provided by law." His statutory duties are set forth in Sec. 67–5–1, U.C.A.1953:
"(1) To attend the Supreme Court of this state, and all courts of the United States, and prosecute or defend all causes to which the state or any officer, board or commission thereof in an official capacity is a party; . . .
\* \* \* \* \*
"(5) To exercise supervisory powers over the district and county attorneys of the state in all matters pertaining to the duties of their offices, . . .
\* \* \* \* \*
"(7) When required by the public service or directed by the governor, to assist any district or county attorney in the discharge of his duties."

copy of the proceeding and be entitled to be heard.

As to the propriety and essentiality of the Attorney General as a party, the recognized authority on Declaratory Judgments, Anderson, states in his text:

> It is a general rule that where legislation is assailed, the attorney general must be a party or given notice thereof by the way of service of pleadings upon him and where the proceeding is lacking in this respect, a declaratory judgment cannot be granted.[12]

In accord with that idea is the case of Jefferson County Fiscal Court et al. v. Trager, 300 Ky. 606, 189 S.W.2d 955. The court stated that declaratory judgment as to the validity of a statute should not be given because the Attorney General had not been served. Ethington et al. v. Wright et al., 66 Ariz. 382, 189 P.2d 209, indicates that when the validity of a statute is challenged the Attorney General should be a party. See also Attorney General v. Book Named "Tropic of Cancer," 345 Mass. 11, 184 N.E.2d 328. The Attorney General, charged with the duty of enforcing laws, was regarded as proper party plaintiff, the reverse should be true: that he is a proper party defendant.

Joining the Governor of the State as a party defendant should give us no concern. The plaintiffs justify it by pointing to the general duties imposed upon the Governor. Under Article VII, Section 5, of the Constitution, he is charged with the duty to "see that the laws are faithfully executed"; and "shall transact all executive business with the officers of the government . . . . ." His duties are further set out in Sec. 67-1-1, U.C.A.1953:

> In addition to those prescribed by the Constitution, the governor has the following powers and must perform the following duties:
>
> (1) He shall supervise the official conduct of all executive and ministerial officers.
>
> (2) . . . see that all offices are filled, and the duties thereof performed, * * *.
>
> * * * * * *
>
> (7) He may require the attorney general to aid any county attorney in the discharge of his duties.

However, as to the Governor there should be no prejudice whatsoever in his being made a party. In the case of Goldstein v. Rockefeller,[13] the question was raised as to the propriety of the Governor being made a party in a declaratory judgment action. The court denied the motion to dismiss him as a party and said ". . . I would prefer to see too many parties to this action for a declaratory judgment than not enough." (All emphasis added.)

12. Anderson, Actions for Declaratory Judgments, Vol. 1, Sec. 179.

13. 257 N.Y.S.2d 994.

Affirmed. The parties to bear their own costs.

TUCKETT and ELLETT, JJ., concur.

CALLISTER, Chief Justice (dissenting).

I respectfully dissent. Although I cannot express any disagreement with the statutory interpretation in the majority opinion, the Declaratory Judgment Act was not designed for giving advisory opinions in a nonadversary action.[1]

A declaratory judgment may not be rendered in an action where there is no justiciable controversy because the interests of the parties are not adverse. The courts have generally held that the following conditions must exist in order that declaratory relief may be obtained: (1) there must exist a justiciable controversy, i. e., a controversy in which a claim of right is asserted against one who has an interest in contesting it; (2) the controversy must be between persons whose interests are adverse; (3) the party seeking declaratory relief must have a legal interest in the controversy, i. e., a legally protectible interest; and (4) the issue involved in the controversy must be ripe for judicial determination.[2]

In the instant action, defendants prayed that plaintiffs' action should be dismissed on the ground that the complaint failed to state a claim upon which relief may be granted against the defendants named in the complaint. The trial court erred when it did not dismiss the action on this ground. The named defendants have no interest in contesting the claimed right asserted by plaintiffs; therefore, there is no justiciable controversy. Furthermore, the interests of the parties are neither adverse nor connected whatsoever. The plaintiffs have no legally protectible interests which may be affected by the acts of defendants.[3] The plaintiffs do not assert that they might be prosecuted under Sec. 64–10–12, U.C.A.1953; they may not complain of an action which does not affect them. There is no justiciable controversy where there are merely allegations concerning the violation of a penal statute by persons not parties to the action.[4]

There is also a defect in the parties defendant. Sec. 78–33–11, U.C.A.1953, provides:

When declaratory relief is sought all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. . . .

1. Backman v. Salt Lake County, 13 Utah 2d 412, 417, 375 P.2d 756 (1962).

2. Lyon v. Bateman, 119 Utah 434, 439, 228 P.2d 818 (1951); Langer v. State, 69 N.D. 129, 284 N.W. 238, 245 (1939).

3. Maryland Naturopathic Assn. v. Kloman, 191 Md. 626, 62 A.2d 538, 539–540 (1948).

4. Wisconsin Pharmaceutical Assn. v. Lee; 264 Wis. 325, 58 N.W.2d 700, 702 (1953).

Plaintiffs sought and the court granted an order enjoining the enforcement of Sec. 64–10–12, except in accordance with the interpretation asserted. Under Secs. 67–7–4 and 5, U.C.A.1953, the district attorney, and under Sec. 17–18–1, U.C.A.1953, the county attorney are vested with the prosecutorial powers in the enforcement of the law of this State. Under Sec. 78–33–11, U.C.A.1953, the public officers charged by law with the enforcement of a challenged statute must be joined.[5]

The judgment of the trial court should be reversed.

HENRIOD, J., concurs in the views expressed in the dissenting opinion of CALLISTER, C. J.

---

**5.** Wisconsin Pharmaceutical Assn. v. Lee, footnote 4, supra; Maryland Naturopathic Assn. v. Kloman, footnote 3, supra.