**William C. HOYLE, on his own behalf and on behalf of all others similarly situated and on behalf of the· Socialist Workers Party, Plaintiff and Respondent,**

v.

**David S. MONSON, Lieutenant Governor-Secretary of State, and the State of Utah, Defendants and Appellants.**

**Nos. 16133, 16134.**

Supreme Court of Utah.

Jan. 21, 1980.

5. Ibid.

HALL, Justice:

David S. Monson, Lieutenant Governor-Secretary of State, and the State of Utah (hereinafter designated "Defendants"), appeal from the judgment of the Third District Court which declared U.C.A., 1953, 20-3-14 unconstitutional. The statute reads in pertinent part as follows:

Any candidate filing a nomination paper or acceptance . . . shall pay to the filing officer a fee for such filing. The fee to be paid shall be one fourth of one per cent of the total salary for the full term legally or customarily paid by such office.

The record furnished in this matter is scant. It contains none of the pleadings, and, in essence, consists only of the trial court's Memorandum Decision. It is from that source that we glean the following facts.

William C. Hoyle and Bruce Bangerter (hereinafter designated "Plaintiffs"), filed separate proceedings below,[1] both alleging that they were without funds to pay the filing fee for their candidacy for the U.S. Congress as provided by the statute in question. Nevertheless, plaintiff Hoyle's filing fee was paid. (He alleged it to have been paid with borrowed funds, for which he sought reimbursement.) Plaintiff Bangerter filed an affidavit of impecuniosity and sought placement of his name on the ballot without the payment of a filing fee.

At trial, plaintiffs challenged the constitutionality of the filing fee requirement, only as it relates to impecunious candidates. The parties stipulated that, for the purposes of this action, the court should consider both plaintiffs as impecunious. However, it is evident from the following excerpt from its Memorandum Decision that the court declined to accept the stipulation and, in fact, concluded to the contrary:

. . . After examining the statements submitted I cannot see that either

Robert B. Hansen, Atty. Gen., Joseph P. McCarthy, Asst. Atty. Gen., Salt Lake City, for appellants.

Ross C. Anderson and Colin King, of Berman & Giauque, Salt Lake City, for respondent.

---

1. The proceedings were consolidated for hearing and remain so for the purposes of this appeal.

petitioner is impecunious. It appears to be a matter of priority and each petitioner puts the payment of a filing fee as the lowest item on priority.

Notwithstanding the foregoing finding and conclusion, the court addressed the constitutionality of the statute in question and concluded that it violates the Constitution of Utah, Article I, Section 4, which prohibits the requirement of a property qualification of one holding office. Therein the court erred.

■ The right and power of the judiciary to declare whether legislative enactments exceed constitutional limitations is to be exercised with considerable restraint and in conformity with fundamental rules. One such fundamental rule of long-standing is that unnecessary decisions are to be avoided and that the courts should pass upon the constitutionality of a statute only when such a determination is essential to the decision in a case.[2] A constitutional question does not arise merely because it is raised and a decision is sought thereon; rather, the constitutionality of a statute is to be considered in the light of the standing of the one who seeks to raise the question and of its particular application.[3] An attack on the validity of a statute cannot be made by parties whose interests have not been, and are not about to be, prejudiced by the operation of the statute.[4]

■ A further fundamental rule is that the courts do not busy themselves with advisory opinions, nor is it within their province to exercise the delicate power of pronouncing a statute unconstitutional in abstract, hypothetical, or otherwise moot cases.[5] It has been found to be far wiser, and it has become settled as a general principle, that a constitutional question is not to be reached if the merits of the case in hand may be fairly determined on other than constitutional issues.

■ In the instant case, plaintiffs concede that the validity of their challenge turns on their status as impecunious office seekers. Therefore, it was not necessary for the trial court nor is it now necessary for this Court to reach the question as to the constitutionality of the filing fee provision, for the plaintiffs lack standing to bring the action. Plaintiffs are without standing by virtue of their failure to demonstrate that the enforcement of the filing fee provision denied them a constitutionally guaranteed right. It is not sufficient that, at some future time, an application of the statute might infringe upon the constitutional rights of differently situated persons; such an eventuality is to be dealt with only if and when it arises, and then it must be upon petition of the injured party. In the absence of a showing of a denial of protected rights, there is no constitutional issue properly before us.[6]

As hereinabove observed, the stipulation of impecuniosity proffered by the parties was expressly rejected by the trial court. Of even greater consequence is the fact that the contrary conclusion reached by the trial court (that the plaintiffs were *not* impecunious) is not challenged on this appeal. Rather, the parties simply again proffer the same stipulation of impecuniosity.

A finding of the trier of fact is generally left undisturbed when met with no challenge on appeal, and we are not persuaded to ignore the finding made in this instance by reason of the stipulation in derogation thereof which accompanies this appeal. The far-reaching effect of a constitutional determination upon the rights of the general public negatives any consideration of a constitutional question presented by a friendly or fictitious suit or on admitted or agreed facts. Such questions are only to be

---

**2.** *State v. Candland*, 36 Utah 406, 104 P. 285 (1909).

**3.** *Cavaness v. Cox*, Utah, 598 P.2d 349 (1979).

**4.** *State v. Kallas*, 97 Utah 492, 94 P.2d 414 (1939), and the cases cited therein; see also, *Sims v. Smith*, Utah, 571 P.2d 586 (1977).

**5.** *Baird v. State*, Utah, 574 P.2d 713 (1978).

**6.** *Rio Grande Lumber Co. v. Darke*, 50 Utah 114, 167 P. 241 (1917).

reached after a full disclosure of all material facts. We therefore accept the trial court's unassailed finding that neither of the plaintiffs are truly indigent.

The order of the trial court requiring a refund of plaintiff Hoyle's filing fee and placement of plaintiff Bangerter's name on the ballot is vacated and set aside and the proceedings herein are dismissed. No costs awarded.

STEWART, J., and ELLETT, Retired Justice Pro Tem, concur.

CROCKETT, Chief Justice (concurring, but with separate comments).

I agree that the court's disposition of this case is not without justification in law. But I cannot see the practicality nor the wisdom of failing to treat the issue presented. This is especially so because the issue upon which the main opinion is based was not raised in the district court, nor by either party in this Court,[1] and both seem to desire to have an answer. I am impelled to point out that the problem will continue to exist until some answer is provided. For that reason, I think it not amiss to make some separate observations.

The purpose of the statute providing for declaratory judgments was to afford a means for obtaining an adjudication without the necessity of anyone having suffered damages or gotten into serious difficulties before he could have his rights determined.[2] Accordingly, there is sound law, with which I am in accord, to the effect that, especially where there is a public interest to be served, the courts should be liberal in dealing with such matters.[3]

Even in a democracy, where great emphasis is properly placed on the right of each individual to do as he pleases, there must be some limitations upon the freedoms of individuals for the common good. In order to avoid confusion in elections, it is necessary that there be imposed some reasonable requirements as to qualifications and procedures.

The desired objective is to provide a method which will allow, and indeed encourage, well-qualified candidates to indicate their willingness to serve in public office, and at the same time, enable the voters to make the best choice between them. There are a number of public interests to be served in keeping the number of candidates within manageable proportions. This justifies the guarding against filings which may be for purposes other than good faith candidacies,[4] such as filings by crusaders, fanatics, or eccentrics, who have no realistic prospect of public support, who may file merely for publicity, or for other unjustified or obstructive purposes.[5]

The requirement of a payment of a reasonable filing fee, in addition to having other specified qualifications for office, seems calculated to minimize the evils just mentioned and to serve the desired objective of limiting the candidates to persons of good qualifications and serious purpose who have at least some reasonable prospect of public support. This aids in reducing voter confusion by allowing attention to be focused upon a reasonably small number of such candidates; and it avoids the encumbering of the handling of elections.

In a society where money is so essential as a means of living, the likelihood of a person entirely without money being otherwise qualified for public office would seem to be quite rare. Nevertheless, allowance should be made for that possibility. If such a person has the other qualifications to be

1. That we do not consider matters raised for the first time on appeal, see *Hamilton v. Salt Lake County*, 15 Utah 2d 216, 390 P.2d 235.

2. See 1 C.J.S. Actions, § 18(3) and cases there cited; see also *Parker v. Rampton*, 28 Utah 2d 36, 497 P.2d 848, citing *Terrace v. Thompson, Attorney General of Wash.*, 263 U.S. 197, 44 S.Ct. 15, 68 L.Ed. 255.

3. Id. There are some situations where, due to unavoidable delays in our legal system, the problem will become moot before the case can be decided.

4. See Anno. 89 A.L.R.2d 864.

5. The public press (Salt Lake Tribune, December 30, 1979) reports that an opponent accuses one politician, Panjay Ghandi, of encouraging and causing such a chaotic condition in India where over 500 persons have filed to be candidates for one party's seats in their congress.

regarded a bona fide candidate who will attract any substantial support, it is safe to assume that some of his supporters would provide his filing fee; or as a reasonable alternative thereto,[6] he could be required to obtain a substantial number of signatures to support his filing.

With deference to the position expressed in the main opinion, it is my judgment that this Court would perform a useful and desirable public purpose by so confronting and dealing with the problem presented, and rejecting the attack upon the statute.

MAUGHAN, J., concurs in the result of Chief Justice CROCKETT's concurring opinion.

WILKINS, J., having disqualified himself, does not participate herein.

---

**6.** See *Lubin v. Panish*, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702; and this is said notwithstanding *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92, relating to specific conditions in Texas.