EDWIN LYNN, APPELLEE, v. KEARNEY COUNTY, APPELLANT.

FILED APRIL 21, 1931. No. 27642.

*C. A. Sorensen, Attorney General, Clifford L. Rein* and *J. L. McPheely,* for appellant.

*King & Bracken, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

GOOD, J.

This is an action praying for a declaratory judgment, wherein plaintiff seeks to have determined the power of defendant to make and execute contracts with the several townships of the defendant county, whereby the defendant, for an agreed consideration, will construct and maintain township roads within the borders of the several townships with which it has executed such contract, and with other townships with which it contemplates making similar contracts and performing similar work. The trial court found and determined that defendant had no such power, and entered judgment conformable to the prayer of plaintiff's petition. Defendant has appealed.

In the minds of some of the justices of this court, grave doubts have arisen as to the jurisdiction of the court to entertain an action for a purely declaratory judgment. The jurisdiction of the court to entertain such a proceeding and to enter such a judgment is not assigned as error, or discussed in the briefs. Since the validity of such a judgment depends on the court's jurisdiction, we feel impelled to examine into the question, notwithstanding it has not been raised by the parties to this proceeding.

From a somewhat extensive investigation, we find that the declaratory judgment was first authorized and used in the Roman law. Later it found its way into court procedure in Germany, Spain, France and Austria. Still later, and about 400 years ago, it found its way into the procedure adopted in Scotland, and more than 50 years ago it was adopted in the jurisprudence of England. It is now recognized and applied in Canada, Australia, New Zealand and in a number of the sister states of this country. Unavailing efforts have been made to induce the

congress of the United States to enact a law authorizing the federal courts to render declaratory judgments. In 1922 the national conference of commissioners on uniform state laws prepared a model act which is known as the "Uniform Declaratory Judgments Act." This act has been adopted, substantially as drafted, in 12 or more of the states. Nebraska adopted the act in 1929, and it now appears as sections 20-21,140 to 20-21,155, Comp. St. 1929.

In a brief by Professor Borchard of Yale University, favoring the enactment by congress of a bill authorizing federal courts to render declaratory judgments, printed in 1919 for the use of the senate judiciary committee of the sixty-fifth congress, there is contained an extensive review of the history and use made by the courts of other countries of this procedural reform. The question of the desirability of such an act has been discussed by a number of eminent jurists and professors of law. Among the very interesting and instructive articles on this subject the following may be noted: "A Modern Evolution in Remedial Rights—the Declaratory Judgment," by Professor Sunderland of the University of Michigan, appearing in 16 Mich. Law Review, 69; notes by T. Munford Boyd in 15 Va. Law Review, 79; and articles by Professor Borchard appearing in 28 Yale Law Journal, 1, and 37 W. Va. Law Quarterly, 127.

In 1919 the legislature of Michigan passed an act purporting to authorize courts of record in that state to make binding declaration of rights. In *Anway v. Grand Rapids R. Co.*, 211 Mich. 592, also reported in 12 A. L. R. 26, by a divided court the act was held unconstitutional upon the theory that it required performance by the court of acts nonjudicial in character and in conflict with the constitutional provision vesting judicial power in the courts. In that case, as in this, the question of the validity of the act was not raised by the parties. Appended to the opinion of that case reported in 12 A. L. R., at page 52, is an exhaustive note dealing with practically every phase of declaratory judgments acts, and wherein it is disclosed that the federal courts have generally refused to render

eo nomine declaratory judgments, but it is also pointed out that, in effect, such judgments have been rendered by the federal courts. As shown in the note, many, if not all, of the states of the Union have, from time immemorial, rendered judgments that are, in their nature, merely declaratory of the rights of the parties, and wherein no consequential relief was afforded; that is, any relief which could be enforced by execution. An action to annul a void marriage, because of incapacity of one of the parties to enter into the marriage contract, action to quiet title, where plaintiff's possession or title has not been threatened by another, action for construction of a will, and an action by a trustee for instruction and direction in the performance of his duties are illustrative of the use of declaratory judgments.

In 1929 the legislature of Michigan enacted another law authorizing the courts to render declaratory judgments, and the validity of this act was before the supreme court of that state in *Washington-Detroit Theater Co. v. Moore*, 249 Mich. 673. In the opinion in that case it was held that the act was not unconstitutional and did not require the court to perform nonjudicial functions. It was held that declaratory judgments are self-enforcing to the extent of being final, and constitute *res judicata*. It appears that the later act of the Michigan legislature authorized the rendering of declaratory judgments only in cases of actual controversy. In a separate concurring opinion by Wiest, C. J., it was said: "I can see no *legal* objection to the statute if, in practical application, it is limited to *bona fide* justiciable issues. The advisability of such a law is a legislative question, but its applicability in a particular instance is a judicial question. The statute does not supplant present legal and procedural methods, estop suits at law or in equity, or remit one having a right of action to its employment. With this understanding, I am constrained to concur in the opinion of Mr. Justice Fead (the writer of the principal opinion)."

In 1921 the Kansas legislature enacted a law authorizing the rendition of declaratory judgments. In the case of

*State v. Grove,* 109 Kan. 619, 19 A. L. R. 1116, the supreme court of that state had before it the validity of the act. It was therein held: "A statute authorizing the rendition of merely declaratory judgments is not unconstitutional on the ground of attempting to confer nonjudicial power upon courts. Such judgments may be judicial acts although rendered in actions admittedly brought before a right has been invaded, and although no consequential relief is given or sought." In the course of the opinion in that case it was said (p. 622): "Against the validity of the statute it is urged that the occasion for judicial action cannot arise until a claim is made that an actual wrong has been done or is immediately threatened and moreover (what is much the same thing stated in another way) that a decision cannot properly be classed as a judgment, as a strictly judicial act, unless besides determining the merits of the controversy between the parties, deciding which is right, it affords (or denies) some additional remedy—in other words 'consequential relief'; and therefore that power to decide a controversy in the absence of the conditions indicated is not judicial and cannot be conferred upon courts by the legislature. This view appears to us to be unsound and to be the result of confusing declaratory judgments with advisory opinions and decisions in moot cases, and perhaps also of an inclination to treat a general practice that has been long established as having acquired the force of a constitutional guaranty. A mere advisory opinion upon an abstract question is obviously not a judgment at all, since there are no parties to be bound and the rights of no one are directly affected. The situation is substantially the same where opposing parties present a moot question—one the decision of which can have no practical effect. Where a judgment is sought of such character as to be of no benefit unless accompanied by an order the carrying out of which is impossible, the futility of the proceeding is a sufficient basis for a court's refusal to entertain it, whether or not jurisdiction to do so exists. But some judgments are wholly or in part self-operative. They perform a

valuable function in and of themselves. It is often said that a cause of action arises only upon the breach of a duty—the invasion of a right. This, however, is merely the announcement of a general rule of practice subject to possible exceptions and to legislative change. Actions to quiet title and to construe wills are recognized methods of invoking judicial action which do not originate in the actual commission of a wrong nor terminate in a judgment inflicting a penalty, granting compensation or injunction, or otherwise giving 'consequential relief,' the declaration of rights being all that is necessary to fit the requirements of the case. The decree in an action to quiet title is sometimes so drawn as to order the setting aside or cancelation of a deed. A declaration that the instrument is void and without effect amounts to the same thing. The judgment does not change the condition of the title but simply declares where it is vested. It gives the only relief that is necessary to settle the controversy—the determination of the ownership of the property. Why the legislature cannot authorize similar procedure in like situations to meet like needs is not apparent. It is hardly conceivable that any fundamental principle of our government, beyond legislative control, prevents two disputants, each of whom sincerely believes in the rightfulness of his own claim, but each of whom wishes to abide by the law whatever it may be determined to be, from obtaining an adjudication of their controversy in the courts without one or the other first doing something that is illegal (in the case of the present defendant criminal) if he is mistaken in his view of the law.

"The mere judicial determination that one party to litigation is right in his contentions and his opponent wrong accomplishes in some instances all that he seeks and in others at least a considerable part of it; it conclusively and finally settles the question of liability between the parties."

Similar rulings have been announced by the courts of last resort in a number of states. We reach the same conclusion as did the courts of Michigan and Kansas. The

proper construction of the Nebraska declaratory judgments act is that it is applicable when there is an actual controversy, where only justiciable issues are presented by proper parties. So construed, the act does not confer on the courts nonjudicial powers.

The one remaining question for consideration is: Did the county have the power to make and execute contracts with the townships whereby the former, for an agreed consideration, would construct and maintain township roads within the township with which the contract was made?

The rule in respect to powers of counties is stated in 15 C. J. 419, in this language: "As a county is a quasi corporation and a governmental agency of the state, with no independent sovereignty, it possesses only such powers as are expressly given, or necessarily implied, in statutes constitutionally enacted."

In *Lancaster County v. Green*, 54 Neb. 98, it was held: "A board of county commissioners, in addition to the powers especially conferred by statute, has such other powers as are incidentally necessary to enable such board to carry into effect the powers granted.

"The word 'necessary' considered and, in respect to the implied powers of boards of county commissioners, *held* to mean no more than the exercise of such powers as are reasonably required by the exigencies of each case as it arises."

In *Garver v. City of Humboldt*, 120 Neb. 132, it was held: "Powers conferred upon municipal boards by legislative charter will not be extended beyond the plain import of the language used therein."

It therefore follows that if the county has power to enter into such contracts as are involved herein, it must be found in the statutes, or it must be necessarily implied from the express powers which are granted. Defendant contends that such power does exist and may be found in sections 26–104, 39–101, 39–212, 39–214, 39–233 to 39–236, and 39–1205, Comp. St. 1929.

We have carefully examined each of these sections and

find that none of them confers any express power upon counties to enter into such contracts; nor can we find that such power is necessary to a proper and reasonable exercise of any of the powers expressly granted. We therefore conclude that the county is unauthorized to enter into such contracts.

The judgment of the district court is right.

AFFIRMED.