**MISSOURI DEPARTMENT OF SOCIAL SERVICES, et al., Appellants,**

v.

**AGI–BLOOMFIELD CONVALESCENT CENTER, INC., et al., Respondents.**

**No. WD 35697.**

Missouri Court of Appeals, Western District, Division One.

Nov. 27, 1984.

See also, 679 S.W.2d 294.

Gregory W. Schroeder, Gen. Counsel Div., Dept. of Social Services, Jefferson City, for appellants.

Harvey M. Tettlebaum, W. Duane Benton, Jefferson City, for respondents.

Before NUGENT, P.J., and SHANGLER and SOMERVILLE, JJ.

SOMERVILLE, Judge.

Plaintiffs-appellants (hereinafter plaintiffs), the Missouri Department of Social Services, Barrett A. Toan, Director, Missouri Department of Social Services, the Missouri Division of Family Services, and Joseph J. O'Hara, Director, Missouri Division of Family Services, filed an action for declaratory judgment in the Circuit Court of Cole County, Missouri, respecting the validity and enforcement of certain provisions, particularly (7)(F)1.C., of 13 CSR 40–81.081 captioned "Prospective Reimbursement Plan For Long-Term Care". The aforementioned rule was promulgated by the Missouri Department of Social Services pursuant to its legal mandate to administer the Medicaid Program[1] in this state. Defendants-respondents (hereinafter defendants) are some twenty-five (25) separate corporate entities operating nursing homes in the State of Missouri and participating in the Medicaid program.

Defendants filed a motion to dismiss plaintiffs' petition for declaratory judgment on three stated grounds: (1) plaintiffs' petition failed "to state a claim upon which relief could be granted"; (2) plaintiffs lacked "standing" to bring the action; and (3) the trial court lacked "jurisdiction over the subject matter". The trial court, without stating grounds or reason for doing so, sustained defendants' motion to dismiss and ordered plaintiffs' cause of action "dismissed with prejudice". Accordingly, it is assumed on appeal that the trial court

1. The Medicaid Program, 42 U.S.C.A. § 1396, et seq., provides, inter alia, for federal and state sharing of payments for nursing home services provided certain qualified individuals.

dismissed plaintiffs' petition for declaratory judgment on the grounds or for the reasons set forth in defendants' motion to dismiss. *Vorbeck v. McNeal,* 560 S.W.2d 245, 249 (Mo.App.1977). Therefore, defendants' injection on appeal that the trial court's order of dismissal was justified for the additional reason that it constituted a proper exercise of discretion pursuant to § 527.060, RSMo 1978, and their conglomeritic argument on appeal in support thereof, will not be entertained.

Plaintiffs' single point on appeal, that the trial court erred in dismissing their petition for declaratory judgment on the grounds or for the reasons set forth in defendants' motion to dismiss, carves the boundaries of appellate review. The issues presented on appeal collectively raise a question of paramount significance—may state agencies and their respective directors invoke declaratory relief respecting the validity and application of their own rules and regulations?

▇▇▇ Attention first focuses on whether plaintiffs' petition stated a claim upon which relief could be granted. In reviewing the sufficiency of plaintiffs' petition to state a claim for declaratory relief, this court must construe it favorably to plaintiffs, accept as true all facts alleged therein, and accord it the benefit of every reasonable and favorable inference the facts pleaded will permit. *Lalumondier v. County Court of St. Francois County,* 588 S.W.2d 197, 198 (Mo.App.1979); and *Vorbeck v. McNeal,* supra, 560 S.W.2d at 249. Concomitantly, a petition invoking declaratory relief, in order to survive a motion to dismiss for failure to state a claim upon which relief can be granted, must allege a state of facts demonstrating the existence of certain obtaining principles which have evolved from cases addressing actions for declaratory judgments. *Wells v. Henry W. Kuhs Realty Co.,* 269 S.W.2d 761, 767 (Mo.1954); *Pollard v. Swenson,*

411 S.W.2d 837, 841 (Mo.App.1967); and *Vorbeck v. McNeal,* supra, 560 S.W.2d at 252. One, facts must be alleged showing a subsisting justiciable controversy between the parties admitting of specific relief by way of a decree of a conclusive character, as opposed to a mere advisory decree upon a hypothetical state of facts. *State ex rel. Chilcutt v. Thatch,* 359 Mo. 122, 221 S.W.2d 172, 176 (Mo. banc 1949); *Transport Manufacturing & Equipment Co. v. Toberman,* 301 S.W.2d 801, 806 (Mo. banc 1957); *Pollard v. Swenson,* supra, 411 S.W.2d at 841; and *Higday v. Nickolaus,* 469 S.W.2d 859, 862 (Mo.App.1971). Two, facts must be alleged showing that the party or parties seeking declaratory relief have a "legally protectable interest at stake." *State ex rel. Chilcutt v. Thatch,* supra, 221 S.W.2d at 176; *City of Jackson v. Heritage Savings & Loan Assoc.,* 639 S.W.2d 142, 144 (Mo.App.1982); and *Higday v. Nickolaus,* supra, 469 S.W.2d at 862–63. Three, facts must be alleged showing that the question or subject posed for declaratory relief is appropriate and ripe for judicial resolution. *State ex rel. Chilcutt v. Thatch,* supra, 221 S.W.2d at 176; *City of Jackson v. Heritage Savings & Loan Assoc.,* supra, 639 S.W.2d at 144 (Mo.App.1982); and *Higday v. Nickolaus,* supra, 469 S.W.2d at 863.

The petition at hand, upon analysis in conformity with the principles hereinabove enumerated, alleges facts showing the following: (1) that the respective positions of plaintiffs and defendants are polarized as to the validity, construction, meaning and applicability of 13 CSR 40–81.081(7)(F)1.C. with respect to plaintiffs' presently intended reconsideration of defendants' Medicaid per diem reimbursement rates; and (2) that plaintiffs were under threat of legal action by defendants if plaintiffs applied 13 CSR 40–81.081(7)(F)1.C., as construed by them, regarding reconsideration of defendants' Medicaid per diem reimbursement rates.[2]

---

**2.** The legal file discloses that the day after plaintiffs filed their petition for declaratory judgment, defendants, as plaintiffs, filed a multi-count petition against plaintiffs (*except plaintiff*

O'Hara), and others, as defendants, seeking a contra-declaratory judgment regarding the validity, meaning and applicability of 13 CSR 40–81.081(7)(F)1.C., injunctive relief, and attorney

It is appropriate at this juncture to take note of §§ 208.152.1 and 208.159, RSMo Supp.1983. Section 208.152.1, supra, provides, inter alia, that payments to nursing home participants in the Medicaid program are "... to be made on the basis of the reasonable cost of the care or reasonable charge for services as defined and determined by the division of family services...." Section 208.159, supra, provides, inter alia, that "[n]otwithstanding the provisions of section ... 208.152 ... the department of social services shall administer payments for nursing home services authorized in sections 208.151, et seq., which govern medical assistance under Title XIX, Public Law 89–97, 1965 amendments to the Federal Social Security Act ... as amended, ... [and] [t]he department shall, pursuant to chapter 536, RSMo, promulgate rules and regulations for the purpose of administering such payments, including rules to define the reasonable costs, manner, extent, quality, charges and fees or payments for nursing home services." It is also appropriate at this juncture to take note of 42 U.S.C.A. § 1396a(13)(A) which, inter alia, specifies that nursing homes be reimbursed at rates "which the State finds, and makes assurances satisfactory to the Secretary [Secretary of Health and Human Services], are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards...." The duty and responsibility falling upon the agencies and individuals seeking declaratory relief in the instant case to promulgate rules and regulations appertaining to Medicaid per diem reimbursement rates is patent.

Guiding upon the principles heretofore enumerated for ascertaining whether or not plaintiffs' petition for declaratory judgment stated a claim upon which relief could be granted, the following two conclusions may readily be drawn: plaintiffs' petition for declaratory judgment pled facts showing a subsisting justiciable controversy between the parties, admitting of specific relief by way of decree of a conclusive character; and one which was ripe for judicial resolution. The remaining requisite principle attendant determination of whether plaintiffs' petition for declaratory judgment pled facts upon which relief could be granted, i.e., that plaintiffs had a "legally protectable interest at stake", presents a more vexing question demanding further analysis and consideration.

The duty and obligation impressed upon the agencies and their respective directors in the instant case to administer the vast and comprehensive social program known as Medicaid, by the promulgation and implementation of rules and regulations, standing alone, demonstrates that plaintiffs had an undeniable interest at stake of magnum importance. When threatened with litigation by defendants if they implemented the controversial rule or rules in question by making retroactive and prospective Medicaid per diem reimbursement rate decreases affecting all but three of the named defendants, and recouping any prior overpayments by withholding said amounts from current Medicaid per diem reimbursement payments (in reliance upon 13 CSR 40–81.081(9)(B)1–3), plaintiffs were squarely presented with the dilemma of either doing a volte-face or incurring the risk of litigation (which in fact materialized the day after plaintiffs filed the instant action for declaratory judgment). A number of serious ramifications, fraught with corresponding duties and potential risks, arose from the predicament faced by plaintiffs, which cannot be minimized. For example, maintenance of a continuing and orderly flow of available funds for overall administration of the Medicaid program, proper utilization of available appropriated funds to achieve a balance of fairness for all Medicaid patients entitled to assistance, and accountability for their statutory duty

fees and compensatory and punitive damages in the amount of One Million Dollars ($1,000,000)

under 42 U.S.C.A. § 1983.

of properly expending appropriated funds, on the one hand, while, on the other hand, the potential risk of jeopardizing federal participating funds, and a "Sword of Damocles" hanging over them due to unknown risks associated with the threatened litigation if they pursued their intended course.

The case of *City of Nevada v. Welty*, 356 Mo. 734, 203 S.W.2d 459 (1947), bears considerable weight in determining whether plaintiffs have a "legally protectable interest at stake". The City of Nevada sought a declaratory judgment upholding the validity of an ordinance "declaring stock pens in defendants' sales pavilion to be a nuisance and ordering their removal." Defendants in their answer asserted an intention to sue the city or any of its officers who destroyed any of defendants' property. On appeal, the judgment of the trial court granting the declaratory relief sought by the City of Nevada was affirmed. It is implicit in the opinion rendered on appeal that the City of Nevada was deemed to have had a "legally protectable interest at stake" by reason of defendants' threat to sue the City and its officers if any of defendants' property was damaged. By reason of the quasi-legislative power exercised by administrative agencies in the promulgation of rules and regulations, this court empirically notes that such rules and regulations frequently have an impact approaching, if not equal, to that of many ordinances and statutes. A syllogistic approach to the issue immediately at hand, in light of the pleaded facts and attendant ramifications of serious import inescapably flowing therefrom, compels this court to conclude that plaintiffs in the case sub judice, analogous to a municipality seeking to establish the validity of one of its ordinances when threatened with litigation, likewise have a "legally protectable interest at stake" in establishing the validity of the controversial rule or rules in question when threatened with litigation if implemented by a positive course of action.

Attention now focuses on whether plaintiffs have "standing" to bring the action for declaratory judgment, even though their petition otherwise met the requisite essentials for stating a claim for declaratory relief. From the tone of the respective briefs on appeal, it is obvious that "standing", both below and on appeal, is raised in the sense of whether plaintiffs and the controversial rule or rules come within the purview of §§ 527.010, 527.020, 527.130 and 536.050.1, RSMo 1978. The particular sense in which "standing" is apparently raised in the instant case should not obfuscate the conceptual relation between "standing" and "legally protectable interest", or conterminous applicability of the analyses and conclusions heretofore and hereinafter set forth.

Section 527.010, supra, empowers the circuit courts of this state, "within their respective jurisdictions" to "declare rights, status, and other legal relation whether or not further relief is or could be claimed." Section 527.020, supra, reads: "Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder." Section 527.130, supra, reads: "The word 'person', wherever used in sections 527.010 to 527.130, shall be construed to mean *any person, including* a minor represented by next friend or guardian ad litem and any other person under disability lawfully represented, partnership, joint-stock company, corporation, unincorporated association or society or municipal or other corporation of any character whatsoever." (emphasis added)

Section 536.050.1, supra, is contained in Chapter 536, RSMo 1978, captioned "Administrative Procedure and Review" and reads, insofar as here pertinent, as follows: "The power of the courts of this state to render declaratory judgments shall extend to declaratory judgments respecting the validity of rules, or of threatened applications thereof, and such suits may be maintained

against agencies whether or not the plaintiff has first requested the agency to pass upon the question presented. . . . *Nothing herein contained shall be construed as a limitation on the declaratory or other relief which the courts might grant in the absence of this section.*" (emphasis added) Defendants contend that § 536.050.1, supra, precludes administrative agencies from initiating declaratory judgment actions regarding the validity and application of their own rules and regulations. In support of this contention, defendants seize upon the language that "such suits may be maintained against agencies" and advance the argument that such statement excludes administrative agencies from invoking declaratory relief regarding the validity of rules and regulations which they themselves promulgate. Defendants' position conveniently ignores the concluding sentence of § 536.050.1, supra: "Nothing herein contained shall be construed as a limitation on the declaratory or other relief which the courts might grant in the absence of this section."[3] It is clear from the aforementioned that the legislature did not intend that § 536.050.1, supra, restrict or limit any right to declaratory relief that might otherwise fall within the purview and contemplation of the Declaratory Judgment Act or the general power of courts to entertain declaratory judgment actions. Consequently, there is no escape from revisiting §§ 527.010, 527.020 and 527.130, supra, for the purpose of determining whether or not plaintiffs were entitled thereunder to bring a declaratory judgment action respecting the validity and application of their own rules and regulations.

Defendants contend that since rules and regulations promulgated by administrative agencies are not enumerated in § 527.020, supra, plaintiffs had no "standing" to bring the declaratory action in question. This contention is untenable as § 527.050, RSMo 1978, specifically provides as follows: "The enumeration in sections 527.020 to 527.040, does not limit or restrict the exercise of the general powers conferred in section 527.-010, in any proceeding where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty." Defendants' argument that plaintiffs were not entitled to seek declaratory relief because administrative rules and regulations are not enumerated in § 527.020, supra, necessarily fails by force of statute.

Defendants further contend that plaintiffs are not "persons" as statutorily defined in § 527.130, supra, and therefore lacked "standing" to bring a declaratory action respecting the validity and application of rules and regulations which they promulgated and intended to apply. Significantly, § 527.130, supra, begins "[t]he word 'person', wherever used in sections 527.010 to 527.130, shall be construed to mean *any person, including . . .*" (emphasis added), and then continues with an enumeration of examples of various types of entities. The transitive verb "including" does not evince a legislative intent to limit the definition of "persons" solely to the enumerated entities. To the contrary, "include-ed/-ing" is defined in Webster's Third New International Dictionary (1971 edition) as "to place, list, or rate *as a part or component of a whole or of a larger group, class, or aggregate*". (emphasis added) Defendants' alternate contention necessarily fails by force of definition.

Section 527.120, RSMo 1978, is also of cardinal significance: "This law is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered." Moreover, the following excerpt from *State Tax Comm'n v. Administrative Hearing Comm'n*, 641 S.W.2d 69, 75 (Mo. banc 1982), affords guidance and support: "This Court has recognized that a 'declaratory judgment action provides an appropriate method of determining controversies con-

---

**3.** This concluding sentence in § 536.050.1, RSMo 1978, is not contained in § 7 of the Model State Administrative Procedure Act.

cerning the construction of statutes and powers and duties of governmental agencies thereunder,' ... [citation of authority omitted], and *that in a proper case courts have the right, independent of the Declaratory Judgment Act, see §§ 527.010–.130, to declare void the rules or regulations of an administrative body,* ... [citation of authority omitted]. The declaration of the validity or invalidity of statutes and administrative rules thus is purely a judicial function."

Defendants cite *Polar Ice Cream & Creamery Company v. Andrews*, 146 So.2d 609 (Fla.App.1962), in support of their overall argument that plaintiffs lacked "standing" to seek declaratory relief regarding the controversial administrative rule or rules. In *Polar Ice Cream & Creamery Company*, the Florida Milk Commission and its individual members filed a declaratory judgment action against Polar Ice Cream and Creamery Company respecting the validity of an "order" of the Commission. In filing the declaratory judgment action, the Commission and its members relied on a special venue provision of the Florida Administrative Procedure Act. The Polar Ice Cream & Creamery Company appealed from an order of the trial court denying its motion to dismiss the petition for a declaratory decree on the ground of improper venue. The Florida Court of Appeals, in determining the venue question, "pause[d] to note" that under the *Florida Administrative Procedure Act* the right to obtain judicial declaration as to the validity or meaning of a rule adopted by a state agency was confined to those persons whose rights were affected and did not extend to the agency which adopted the rule. The Florida Court of Appeals then proceeded to hold that the special venue provision in the Florida Administrative Procedure Act was inapplicable and the cause was remanded to the trial court with directions to enter an order transferring the case to the court of another county having venue under the general venue statutes. There is nothing in the opinion, dicta or otherwise, indicating or suggesting that plaintiffs therein could not maintain a de-

claratory judgment action respecting the validity of one of their own rules or orders under statutory provisions authorizing declaratory relief apart from the Florida Administrative Procedure Act. *Polar Ice Cream & Creamery Company* is rejected as persuasive authority for deciding the instant case. The case of *City of Lincoln v. First National Bank*, 146 Neb. 221, 19 N.W.2d 156, 158 (1945), although not cited by any of the parties, appears, at least inferentially and in part, to support plaintiffs' right in the case at hand to seek declaratory relief. "We have held that the term 'person' used in the declaratory judgment act is broad enough to include the state or any subdivision thereof.... [citation of authority omitted]. In both *Dill v. Hamilton*, 137 Neb. 723, 291 N.W. 62, 129 A.L.R. 743, and *Lynn v. Kearney County*, 121 Neb. 122, 236 N.W. 192, this court approved the views expressed in *State v. Grove*, 109 Kan. 619, 201 P. 82, 84, 19 A.L.R. 1116, wherein it was said: 'It is hardly conceivable that any fundamental principle of our government, beyond legislative control, prevents two disputants, each of whom sincerely believes in the rightfulness of his own claim, but each of whom wishes to abide by the law, whatever it may be determined to be, from obtaining an adjudication of their controversy in the courts without one or the other first doing something that is illegal ... if he is mistaken in his views of the law.'" This court readily acknowledges that neither *Polar Ice Cream & Creamery Company*, supra, nor *City of Lincoln*, supra, constitutes definitive authority, one way or the other, for guidance in resolving the apical issue presented by the instant appeal.

■ This court is equally quick to concede that none of the parties have cited, and this court's independent research has failed to disclose, any case authority from this or other jurisdictions which comprehensively addresses and resolves the precise issue of whether an action for declaratory judgment lies for an administrative agency to obtain a judicial resolution of the validity and application of one of its own

rules and regulations. Although the task is made more difficult, the lack of precedential case authority does not relieve this court of its responsibility to resolve this unique issue. Based upon the foregoing analysis of plaintiffs' petition for declaratory judgment and apposite statutory provisions in the Declaratory Judgment Act, this court holds that plaintiffs' petition stated a claim for declaratory relief and that they had "standing" in the sense considered by the trial court to bring the action. Perforce, the trial court erred in dismissing plaintiffs' petition for declaratory judgment.

Resolution of the third and final ground ostensibly relied on by the trial court for dismissing plaintiffs' petition for declaratory judgment—lack of jurisdiction over the subject matter—is self-evident. In holding that plaintiffs' petition stated a claim for declaratory relief and that they had "standing" to bring the same, § 527.010, supra, automatically resolves any doubt in favor of plaintiffs as to subject matter jurisdiction being vested in the trial court to entertain plaintiffs' petition for declaratory judgment.

The order of the trial court dismissing plaintiffs' petition is reversed and the case is remanded for further proceedings.

Reversed and remanded.

All concur.